Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
|---|---|
| Information associated with Facebook User IDs 100005252436869 and 100005318341344 that is stored at premises controlled by Meta Platforms, Inc., headquartered in Menlo Park, California | Case No.  22-4043 MB |

### SEARCH AND SEIZURE WARRANT

**SEALED**

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California.
(identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _____February 24, 2022_____.
                                                                                 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

_____Camille D Bibles_____.
          *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)      ☐ for  days (*not to exceed 30*)
                                                                                 ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____      **Camille D. Bibles** Digitally signed by Camille D. Bibles Date: 2022.02.10 16:57:59 -07'00'

                                                                                 *Judge's signature*

City and State: _____      ___Honorable Camille D. Bibles, U.S. Magistrate Judge___
                                                                                 *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

Executing officer's signature

Printed name and title

## ATTACHMENT A

Property to Be Searched

This warrant applies to information associated with the Facebook user IDs 100005252436869 and 100005318341344 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

ATTACHMENT B

Particular Things to be Seized

I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for the user IDs listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2021 to July 30, 2021;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them January 1, 2021 to July 30, 2021, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and

networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user January 1, 2021 to July 30, 2021, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account January 1, 2021 to July 30, 2021;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The types of service utilized by the user;

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 1111, First Degree Murder, and 18 U.S.C. § 249 (2), Hate Crime involving BEGAY, including information pertaining to the following matters:

(a) Communications between BEGAY and S.W., preparatory steps taken in furtherance of the crime, evidence of BEGAY's motive, or steps taken to conceal evidence.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver

a complete copy of the disclosed electronic data to the custody and control of attorneys for

the government and their support staff for their independent review.

FAX or Internet

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:
Information associated with Facebook User
IDs 100005252436869 and 100005318341344
that is stored at premises controlled by Meta
Platforms, Inc., headquartered in Menlo Park,
California

)
)
)
)
)

Case No.  22-4043 MB

# SEALED

### ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>F.B.I. Special Agent Jacob Holub</u>, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, hereby incorporated by reference.**

located in the Northern District of California, there is now:

**See Attachment B, hereby incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153, 1111, and 249 | Murder and Hate Crime |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Powell  *Ryan Powell*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 2/9/2022

_____
*Jacob Holub*
*Applicant's Signature*

Jacob Holub, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone**

Date/Time: _____

Date:  February 10, 2022

City and State:  Flagstaff, AZ

Camille D. Bibles  Digitally signed by Camille D. Bibles
Date: 2022.02.10 16:58:31 -07'00'

*Judge's Signature*

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A

Property to Be Searched

This warrant applies to information associated with the Facebook user IDs 100005252436869 and 100005318341344 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

Particular Things to be Seized

I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for the user IDs listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2021 to July 30, 2021;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them January 1, 2021 to July 30, 2021, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and

networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user January 1, 2021 to July 30, 2021, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account January 1, 2021 to July 30, 2021;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 1111, First Degree Murder, and 18 U.S.C. § 249 (2), Hate Crime involving BEGAY, including information pertaining to the following matters:

      (a) Communications between BEGAY and S.W., preparatory steps taken in furtherance of the crime, evidence of BEGAY's motive, or steps taken to conceal evidence.

      (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

      (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

      (d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver

a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT

I, Jacob Holub (affiant), a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with certain Facebook accounts that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the accounts.

2.     Your affiant, Jacob Holub, is a Special Agent (SA) of the FBI, and is currently assigned to the Flagstaff, Arizona Resident Agency of the FBI.  I have been employed with the FBI since August 2016. I have been assigned to investigate violent crime on the Navajo Nation Indian Reservation in Arizona. I have received training from the FBI regarding the investigation of violent crime and crimes involving the use of electronic communications.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1111, First Degree Murder, and 18 U.S.C. § 249 (2), Hate Crime, have been committed by Trevor Begay (BEGAY).  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the District Court of Arizona is a district court of the United States that has jurisdiction over the offense being investigated.

## PROBABLE CAUSE

6.      On June 11, 2021, at approximately 08:30 A.M., an individual identified as S.W., an enrolled member of Navajo Nation Indian Tribe, was found deceased on the Navajo Nation Indian Reservation, in an open field 4.5 miles west of mile post 480 off Arizona State Highway 89A, in Cameron, Arizona.  S.W. appeared to have suffered head trauma.

7.      SA Jen Mulhollen arrived on scene at approximately 11:40 A.M. (Flagstaff Local Time).  When SA Mulhollen arrived, the deceased had been removed and

2

transported to the Coconino County Office of the Medical Examiner. SA Mulhollen processed the scene and collected shoe impressions and vehicle tire impressions.

8.    On June 11, 2021, SA Jordan Filippi used a mobile biometrics application to positively identify the deceased as S.W.

9.    On June 14, 2021, SA Mulhollen and Navajo Nation Criminal Investigator (CI) Phylishia Todecheene interviewed S.W.'s mother, K.N., who explained that S.W. was born as a male but identified as a female and went by a female name.

10.    K.N. provided S.W.'s cell phone number as (808) 217-6414. S.W. had a black iPhone and had her own cellular account and did not share a cellular plan with anyone. S.W. typically communicated with family members by text messages or phone calls. S.W. always had her cell phone and would never leave it behind.

11.    S.W. lived in Gap, Arizona, with her mother and sister. On Thursday, June 10, 2021, S.W. left the residence in Gap and told K.N. she was "just going up the road" and would return. At approximately 11:00 P.M., S.W. returned to the residence in Gap to retrieve her bag. K.N. heard what sounded like a loud truck outside. S.W. told K.N. that she was going to Red Lake.

12.    K.N.'s granddaughter, K.G., spoke with and provided a ride to S.W. around 2:00 A.M. on Friday, June 11, 2021.  S.W. contacted K.G. from her cell phone and said she was "stranded in Red Lake" at S.K.'s house.  K.G. did not know where S.K. lived, so S.W. used her phone to share her location with K.G.  S.W. said she wanted to meet a friend at the store in Red Lake and that her friend was coming from Tuba City to pick her

3

up. K.G. took S.W. to the store and saw a blue GMC pickup truck parked at the store as they arrived. The truck was lifted, had tinted windows, big tires, and an LED light bar mounted on top of the windshield. S.W. got into the pickup truck and the truck drove off.

13.     When S.W.'s body was found on June 11, 2021, her phone and bag were not located with her body.

14.     On June 14, 2021, an autopsy was performed on S.W. The full report was received by your affiant on September 9, 2021.  The postmortem examination performed showed S.W. had multiple blunt force head injuries including multiple (7) scalp lacerations, extensive abrasions and superficial lacerations of face, a skull fracture, and multiple areas of bruising of the brain (cortical contusions).  Additional injuries included multiple sharp force injuries including an incised wound of the neck, a stab wound of the right shoulder, and multiple incised wounds of the hands, and the upper and lower extremities had multiple abrasions and contusions.   The death was classified as a homicide and attributed to blunt force craniocerebral injuries.

15.     On June 14, 2021, SA Mulhollen and CI Todecheene drove to the store in Red Lake, Arizona. SA Mulhollen spoke with the on-duty manager, who stated that the store did not have surveillance cameras covering the outside parking lot or gas station.

16.     On June 14, 2021, SA Filippi served a preservation letter to Verizon for cellular number (808) 217-6414, and SA Mulhollen obtained a search warrant for the phone number.

4

17.    On June 17, 2021, SA Mulhollen received the search warrant returns for S.W.'s phone number. SA Brandon King reviewed the information. According to the phone records, a phone call was made to S.W.'s phone by (928) 890-4564 on June 11 at approximately 1:09 A.M. The call is the last incoming call to S.W.'s phone.

18.    Agents conducted a database search for (928) 890-4564 and discovered that the number was associated with 1625 N. West St. in Flagstaff, Arizona.

19.    On June 30, 2021, your affiant drove past 1625 N. West St. in Flagstaff, Arizona, and observed a blue GMC Sierra parked in the driveway.

20.    Agents searched vehicle records and discovered that a 2010 GMC Sierra with Arizona license plate number CNF5059 and VIN 3GTRKTE32AG267210 is registered to BEGAY at 1625 N. West St. in Flagstaff, Arizona.

21.    On June 30, 2021, your affiant obtained a search warrant for the truck parked at 1625 N. West Street, Flagstaff, Arizona.  While executing the search warrant for the vehicle, special agents interviewed BEGAY.  He gave consent for his phone to be searched.  While searching through BEGAY's phone, your affiant discovered the Facebook Application on his phone.

22.    On June 22, 2021, SA King interviewed S.K.  S.K. confirmed that S.W. was at their house on June 10 and/or 11.  S.W. had used Facebook messenger earlier that day to communicate with S.K. about meeting up.  Once they were at S.K.'s house, S.W. was using the hotspot and communicating with people about getting another ride.

5

23.     SOS Pages performed a Facebook search of "Trevor Begay." The search yielded 20 results. One account with the display name "Trevor Begay" had Flagstaff, Arizona listed as the location. Special Agents were able to identify the individual in the profile picture as BEGAY since they interviewed him on a prior occasion.  The Facebook account name was TREVOR.BEGAY.5030, and the user ID was 100005252436869.

24.     A search of S.W.'s last name in  the friends tab of BEGAY's Facebook profile yielded one profile result.  The profile picture from this result and additional photos within the account matched the known victim, S.W.

25.     In an interview with SA Mulhollen, S.W.'s family provided her Facebook account as "Casey Whitesinger" with user ID 100005318341344.

26.     On July 15, 2021, SA King and your affiant interviewed I.S.  I.S. admitted to partaking in the assault that resulted in the death of S.W.  I.S. said that BEGAY had been electronically communicating with S.W.   The conversations were sexual in nature, and BEGAY complimented S.W.'s appearance.  BEGAY asked for a photo of S.W.'s genitals, and S.W. responded that she was transgendered.  BEGAY became furious and said he and I.S. needed to teach S.W. a lesson.

27.     BEGAY and I.S. arranged to meet S.W.  They picked S.W. up in BEGAY's truck.  They stopped at a remote location and BEGAY pulled S.W. out of the truck by her hair.  BEGAY hit and kicked S.W. and beat her with the metal handle to a jack.  As BEGAY attacked S.W., he was saying homophobic slurs.  I.S. also hit and kicked S.W.

6

28.     BEGAY and I.S. transported S.W. to a second location in the desert in the bed of BEGAY's truck.  They left S.W. there.  They had blood on their clothes.  They drove BEGAY's truck to BEGAY's grandparents' house.  They were in possession of S.W.'s phone.

29.     BEGAY and I.S. changed clothes and then drove to a remote area to burn their clothes as well as S.W.'s phone and S.W.'s bag of clothes.  I.S. took agents to the location, and the agents observed and collected burned remains of clothes and what appeared to be the burned remains of a phone.

30.     I.S. did not have a phone.  BEGAY and I.S. used BEGAY's phone for everything.  They had BEGAY's phone with them the entire time.

## BACKGROUND CONCERNING FACEBOOK

31.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

32.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresseses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

7

33.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

34.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

35.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information

about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

36.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

37.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. of the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

38.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

39.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as

well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

40.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

41.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

42.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

43.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

44.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

45.    Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

46.    Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.   Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

47.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact

11

information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

48.    Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

12

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

49.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

50.     Here, there is probable cause that BEGAY's and S.W.'s Facebook accounts contain such information.  S.W. used Facebook messenger shortly before her death.  S.W. and BEGAY were "friends" on Facebook.   BEGAY and I.S. used BEGAY's phone before, during, and after the commission of the crime.  "Status" updates and/or geographic locations attached to posts may contain information indicating whether they were near the scene of the crime.   Further, I.S. stated BEGAY was anti-homosexual, and there may be evidence within BEGAY's Facebook account activity that would show BEGAY's motive to kill S.W.  The investigation has already revealed that BEGAY has likely attempted to conceal evidence because call logs were deleted from his phone.  Information from BEGAY's Facebook account may show additional attempts to conceal evidence.

13

51.     Based on the foregoing, I request that the Court issue the proposed search warrant.

52.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

53.     Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

*Jacob Holub*

Special Agent Jacob Holub
Federal Bureau of Investigation

Subscribed and sworn to telephonically this _____ day of February, 2022.

**Camille D. Bibles**
Digitally signed by Camille D. Bibles
Date: 2022.02.10 16:59:03 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
District of Arizona

14